NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGELO LOCONSOLE, | Civil Action No. 17-8362 |
| *Plaintiff,* | **OPINION** |
| v. | |
| WELLS FARGO MORTGAGE d/b/a AMERICA'S SERVICING COMPANY, | |
| *Defendants.* | |

**John Michael Vazquez, U.S.D.J.**

Currently pending before the Court is Defendant Wells Fargo Home Mortgage's ("Wells Fargo" or "Defendant") motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 7. Plaintiff Angelo Loconsole submitted a brief in opposition, D.E. 8, to which Defendant replied. D.E. 9.[1] The Court reviewed all submissions and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendant's motion is **GRANTED**.

---

[1] In this Opinion, Defendant's motion to dismiss (D.E. 7) will be referred to as "Def. Brf." Plaintiff's brief in opposition (D.E. 8) will be referred to as "Pl. Opp." Defendant's reply brief (D.E. 9) will be referred to as "Def. Rep."

## I. FACTUAL AND PROCEDURAL HISTORY

The following facts are derived from Plaintiff's Complaint as well as the accompanying exhibits and the exhibits attached to Defendant's motion to dismiss.[2]

Plaintiff is a New Jersey resident and owns the residential property located at 25 Burgundy Court, Livingston, New Jersey ("25 Burgundy Court"). Complaint ("Compl.") ¶ 1. Defendant is a division of Wells Fargo Bank. *Id.* ¶ 2. Defendant services Plaintiff's mortgage on 25 Burgundy Court on behalf of U.S. Bank National Association ("U.S.B.N.A."), as Trustee for Credit Suisse First Boston Mortgage Securities Corporation ("U.S.B.N.A."). *Id.* ¶ 3.

By way of background,[3] Defendant indicates that on March 16, 2005, Plaintiff entered into a $620,000 note with NJ Lenders Corporation and a mortgage with Mortgage Electronic Registration Systems, Inc., secured on 25 Burgundy Court. Def. Brf., Certification of Aaron M. Bender, Ex. A ("Bender Cert."); D.E. 7-3. The mortgage was recorded on March 29, 2005, in the Essex County Clerk's Office. *Id.* In 2009, the mortgage was assigned to U.S.B.N.A. *Id.* Although Plaintiff applied for and received a loan modification in January 2009, Plaintiff's loan went into default on October 1, 2013. *Id.*

---

[2] Plaintiff filed his Complaint on October 16, 2017. D.E. 1. Two days later, he filed the exhibits. D.E. 3. The specific factual allegations in the Complaint are, at times, unclear. However, a somewhat more complete picture is made possible when considering the Complaint in conjunction with the submitted exhibits. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). In this matter, Defendant attaches the documents from the underlying state foreclosure action. Plaintiff does not contest the accuracy of the documents.

[3] To the extent that Defendants cite to additional factual information that is not supported by the documents referenced in note 1, *supra*, the Court notes the information for purposes of background only and does not consider it in resolving the motion.

On March 10, 2014, U.S.B.N.A. filed a foreclosure action on 25 Burgundy Court in the Superior Court of New Jersey. *Id.* On July 29, 2015, the New Jersey court entered final judgment in the foreclosure action against Plaintiff.[4] Bender Cert. Ex. B; D.E. 7-4. The final order provided that 25 Burgundy Court be sold and that U.S.B.N.A. was entitled to $377,830.34 with interest. *Id.*

On August 12, 2016, Plaintiff filed a loan and loss mitigation application (the "Application") seeking mortgage relief with Defendant. Compl. ¶ 19, D.E. 1; Ex. A (Application), D.E. 3. Following submission of the Application, Defendant requested additional documents from Plaintiff on multiple occasions, which Plaintiff timely provided. Compl. ¶ 20. One such document was a revised Profit and Loss Statement, which included information regarding rent payments and mortgage liens on Plaintiff's commercial property. *Id.* ¶ 22.

On March 2, 2017, Defendant informed Plaintiff's counsel that the Application had been denied in a letter dated February 24, 2017 ("February Letter"). *Id.* ¶ 26; Ex. B, D.E. 3. Plaintiff's request for a loan modification had been denied because his monthly income was insufficient. Specifically, the February Letter provided that Defendant considered Plaintiff's mortgage for the "Proprietary Step Rate Program." Ex. B (February Letter), D.E. 3. However, the letter went on to explain that Plaintiff did not meet the requirements for this program. It stated "[b]ased on the documentation you provided, we are unable to create an affordable mortgage payment that still meets the requirements of the program. We reached this decision by reviewing your monthly gross income, which is calculated as $6,874, along with reviewing the other information you provided."

---

[4] Defendant attaches records of the state court foreclosure proceeding to its motion to dismiss. The Court may take judicial notice of such proceedings at this stage. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion— not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.")

*Id.* Finally, the February Letter provided that it considered Plaintiff's Application for other modification options, and that he was eligible for a short sale and deed in lieu of foreclose. It also informed Plaintiff of his right to appeal Defendant's decision within twenty calendar days. *Id.*

Plaintiff then appealed on March 15, 2017 ("Application Appeal"). Compl. ¶ 29; Ex. C, D.E. 3. Plaintiff believed that the denial was in error because he listed his income as $10,511, not $6,874, on his Application,. Compl. ¶ 28, Ex. A. Defendant nevertheless denied the appeal in a letter dated March 22, 2017. *Id.* ¶¶ 30-31; Ex. D (Appeal Denial), D.E. 3. Defendant's letter stated "[a]fter carefully reviewing the information we currently have, we have determined that you still do not meet the requirements for a loan modification." Ex. D (Appeal Denial). The letter did not contain further explanation. *Id.*

Following the denial of Plaintiff's appeal, Plaintiff's counsel sent multiple Notices of Error ("NOE") to Defendant. On April 18, 2017, the first NOE informed Defendant that it had (1) incorrectly calculated Plaintiff's gross income; (2) failed to include all of the verified contributions to Plaintiff's household; (3) failed to provide an analysis in its denial of the Application; (4) failed to consider Plaintiff for other loan modification options; and (5) failed to address the merits of Plaintiff's appeal. Compl. ¶ 32, Ex. E, D.E. 3. Defendant responded to the first NOE in a May 18, 2017 letter. Compl. ¶ 33, Ex. F, D.E. 3. In that letter, Defendant explained its method for calculating Plaintiff's monthly gross income:

> We can confirm we reviewed the account for payment assistance options on February 24, 2017. We reviewed the account for the Proprietary Step Rate Program. We were unable to approve the account for assistance because we were unable to create an affordable mortgage payment that still meets the requirements of the program. We calculated the monthly gross income at $6,874.
>
> We calculated the total monthly contribution income for Nicola Loconsole at $1,500, total monthly contribution income for Albina Loconsole at $2,500, and total monthly income for Angelo

4

Loconsole at $2,874. We calculated Angelo's income using the 2015 Schedule C Income because the profit & loss could not be validated. We calculated the taxable gross receipts of $375,364 minus the cost of goods sold of $156,941 and minus total expenses of $183,935. We calculated the total net profit as $34,488. We divided the total net profit by 12 totaling $2,874 for the monthly gross income.

We can confirm the account was not reviewed for a Repayment Plan (RPP) because of the account delinquency. Due to the account status a short term option would not be offered in the account because short term plans would increase the payment amount.

We can confirm we received the appeal request documentation on March 15, 2017. During our appeal review we determined the account still did not meet the requirements for loan modification. We confirmed we were unable to validate the income in the profit & loss. I have enclosed copies of these letters for your records.

*Id.*

On June 29, 2017, Plaintiff's counsel sent Defendant a second NOE, which largely restated the concerns raised in the first NOE. Compl. ¶ 35, Ex. G, D.E. 3. Plaintiff's second NOE did, however, provide a more detailed breakdown of Plaintiff's income, broadly calculated in a profit and loss statement. *Id.* On July 19, 2017, Defendant replied, again, via letter to Plaintiff's second NOE. Compl. ¶ 38, Ex. H , D.E. 3. That letter provided that since Defendant had already reviewed Plaintiff's account in the past, it would not review the loan for modification again. Further, the letter stated that the account was "more than 3 years past due." *Id.*

Finally, on August 9, 2017, Plaintiff's counsel sent Defendant a third NOE, which largely restated the concerns raised in the first and second NOEs. Compl. ¶ 39; Ex. I, D.E. 3. Defendant replied via letter on August 21, 2017, again indicating that it would not further review the loan modification. Compl. ¶ 40; Ex. J, D.E. 3.

On October 16, 2017, Plaintiff filed a Complaint. D.E. 1. The Complaint sets forth three counts: a violation 12 C.F.R. § 1024.41(b), namely "Regulation X" under the Real Estate

Settlement Procedures Act (RESPA); (2) a violation of the New Jersey Consumer Fraud Act ("NJCFA"); and (3) a breach of the duty of good faith and fair dealing. Compl. ¶ 16. The current motion is now pending before this Court.

## II.  **LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted lawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d. Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 231 (3d. Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss

the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

## III.   LEGAL ANALYSIS

Defendant argues that the Complaint should be dismissed for several reasons. First, Defendant argues that the Complaint does not plead a plausible claim under RESPA. Def. Brf. at 4-8. In support, Defendant claims that it is not a servicer under RESPA and that Plaintiff has no legal cause of action to challenge Defendant's denial of his Application for mortgage assistance. *Id.* Second, Defendant argues that the Complaint does not plead a plausible claim under NJCFA because it does not allege that Defendant made actionable misrepresentations or omissions. *Id.* at 8-11. Third, Defendant argues that the Complaint's breach of the covenant of good faith and fair dealing claim is "baseless" because the Complaint does not identify a contract that Defendant breached. *Id.* at 11-12. Finally, Defendant argues that New Jersey's entire controversy doctrine bars the Complaint. *Id.* at 13-15.

### a.   RESPA (Count I)

Congress enacted RESPA in 1974. *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 626 (2012). Congress then "charged the Department of Housing and Urban Development ("HUD")  with the administration and enforcement of RESPA." *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 756 (3d Cir. 2009) (citing 12 U.S.C. § 2607(d)(4), 2617). To that end, Congress allowed HUD to "prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of [RESPA]." 12 U.S.C. § 2617. "HUD's regulations—compiled in the somewhat mysteriously titled "Regulation X"—are set forth at 24 C.F.R. pt. 3500." *Alston*, 585 F.3d at 756.

RESPA requires a "servicer" of any "federally related mortgage loan" to notify a borrower "in writing of any assignment, sale, or transfer of the servicing of the loan[.]" 12 U.S.C. § 2605(b)(1). Under RESPA, a "servicer" is "the person responsible for servicing of a loan (including the person who makes or holds the loan if such person also services the loan)." *Id.* § 2605(i)(2). "[T]he term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments . . . as may be required pursuant to the terms of the loan." *Id.* § 2605(i)(3).

Plaintiff asserts his RESPA claim pursuant to 12 C.F.R. § 1024.41(b) (Loss mitigation procedures). Section 1024.41, in relevant part, provides:

> (a) Enforcement and limitations. A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f)). Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option. Nothing in § 1024.41 should be construed to create a right for a borrower to enforce the terms of any agreement between a servicer and the owner or assignee of a mortgage loan, including with respect to the evaluation for, or offer of, any loss mitigation option or to eliminate any such right that may exist pursuant to applicable law.
>
> (b) Receipt of a loss mitigation application.
>
> > (1) Complete loss mitigation application. A complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower. A servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application.
> >
> > (2) Review of loss mitigation application submission.
> >
> > > (i) Requirements. If a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall:

8

(A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and

(B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (b)(2)(ii) of this section. The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

12 C.F.R. § 1024.41(a)-(b).

Defendant argues that because the New Jersey Superior Court issued a final judgment of foreclosure, Plaintiff no longer has a valid mortgage. "[A] prerequisite for RESPA to apply is an existing mortgage." *Kajla v. U.S. Bank Nat'l. Ass'n*, No. 17-8953, 2018 WL 1128498, slip op. at *7 (D.N.J. Mar. 1, 2018). *See also* 12 C.F.R. § 1024.30(a) (stating that the regulations apply to "any mortgage loan" unless an exception applies). New Jersey courts have ruled that it is a "well-settled principle that a mortgage merges into the judgment of foreclosure." *Virginia Beach Fed. v. Bank of New York*, 299 N.J. Super. 181, 188 (App. Div. 1998). Thus, under New Jersey law, a mortgage no longer exists once a court orders a final judgment of foreclosure.

Courts in this District have split on whether a final judgment of foreclosure extinguishes a mortgage for RESPA purposes. *Compare Perez v. Seterus, Inc.*, No. CV 17-5862, 2017 WL

5513687, at *4 (D.N.J. Nov. 16, 2017) (finding that because the borrower's qualified written request came after a judgment of foreclosure was entered, the loan servicer "had no obligation to respond, because the mortgage loan was extinguished") *and Genid v. Fed. Nat'l Mortg. Ass'n*, No. 15-CV-06787, 2016 WL 4150455, at *3 (D.N.J. Aug. 2, 2016) (holding that following the "final judgement of foreclosure," the plaintiffs no longer owned the property and so the loan servicer could not be their servicer) *with Mannarino v. Ocwen Loan Serv., LLC.*, No. 17-CV-2564, 2018 WL 1526558, slip op. at *5 (Mar. 28, 2018) (distinguishing *Genid* because there "the claims occurred subsequent to judgment and subsequent to the foreclosure sale; here the events occurred after judgment, but before the foreclosure sale."). While *Perez* and *Genid* held that a final judgment of foreclosure extinguishes a mortgage, those cases did not expressly analyze the issue present here, that is the effect of RESPA when a final judgment has been entered but a foreclosure sale had not occurred. Only Judge Sheridan in *Mannarino* explicitly addressed the difference between a claim occurring post judgement but pre-sale. In *Mannarino*, the court concluded that the requirements of RESPA could still be enforced during that period.

12 C.F.R. § 1024.41, the loss mitigation procedure section, appears to distinguish between a final judgment and a foreclosure sale. *See, e.g.*, 12 C.F.R. § 1024.41(g) (stating that under certain circumstances "a servicer shall not move for *foreclosure judgment or order of sale, or conduct a foreclosure sale* . . .") (emphasis added); *see also Bennett v. Bank of Am., N.A.*, 126 F. Supp. 3d 871, 876 (E.D. Ky. 2015) (finding that the plaintiffs stated a plausible claim under Section 1024.41 when the issue arose after the "state court ordered the property foreclosed and issued an order of sale" but before the sale took place).

Moreover, the relevant RESPA regulations contain a preemption provision. 12 C.F.R. § 1024.5(c)(1), in relevant part, reads: "[s]tate laws that are inconsistent with RESPA or this part are

preempted to the extent of the inconsistency." *Cf.* 12 U.S.C.§ 2605(h) (addressing RESPA's statutory preemption provision). Thus, the Court concludes that New Jersey law could arguably be preempted. The parties, however, did not raise the issue of preemption, and the Court declines to decide the issue *sua sponte*. Instead, for purposes of this motion only, the Court will assume that RESPA, 12 C.F.R. § 1024.41, applies here, meaning that RESPA's loss mitigation procedures apply after a New Jersey court has entered a final judgment of foreclosure but before a foreclosure sale has taken place.

The issue, therefore, becomes whether Plaintiff has plausibly pled a violation of Section 1024.41. The Court finds that he has not done so. The facts alleged do not state a plausible claim for a violation of any section of 1024.41. To begin, Section 1024.41(a) provides for the enforcement of, and limitations on, a borrower's rights under RESPA as they relate to loss mitigation procedures. In particular, this section states that "[n]othing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." 12 C.F.R. § 1024.41(a). Thus, it is clear that a servicer does not have to provide a borrower with any, much less a particular, loan mitigation option. Instead, Section 1024.41 appears to govern the process that a servicer must follow if it offers a loan modification program.

Looking to the sections that follow, it appears that Section 1024.41 provides a borrower more with a right to process, rather than a right to any specific outcome. Subsection (b), for example, provides what a servicer must do upon receipt of a loss mitigation application. It requires that a servicer "exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application" so that the servicer can evaluate a complete loss mitigation application. *Id.* § 1024.41(b)(1). Here, the factual allegations in the Complaint show that Defendant reviewed Plaintiff's Application and responded, asking Plaintiff multiple times for

11

further information, before evaluating the Application. *See* Compl. ¶¶ 20-25. Therefore, the Complaint does not allege a plausible violation of Section 1024.41(b).[5]

Turning next to 1024.41(c),[6] the regulations provide what a servicer must do in evaluating a loss mitigation application. Relevant here, the subsection requires a servicer to "[e]valuate the borrower for all loss mitigation options available to the borrower;" and inform "the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower[.]" 12 C.F.R. § 1024.41(c). Further, the servicer must, if applicable, notify the borrower of his "right to appeal the denial of any loan modification option[.]" *Id.* Thus, a servicer does not need to offer a borrower any loan modification option. But it does need to evaluate the borrower for relevant loan modification options, and inform him in writing of whether he qualifies for any such option and if not, why.

The Eastern District of Kentucky addressed Section 1024.41(c) in *Bennett.* There, the court addressed whether a servicer had violated subsection (c) when it reviewed and approved the borrowers for two loan modification options, but only notified the borrowers of one option. 126 F. Supp. 3d 871, 883-884 (E.D. Ky. 2015). The *Bennett* court concluded that the borrowers had pled a plausible violation of Section 1024.41(c). *Id.* at 884. The court first acknowledged that a servicer does not have to offer a borrower any specific loan modification option. *Id.* However, the court in *Bennett* went on to hold that subsection (c) imposes a "duty on a servicer to notify a borrower

---

[5] Section 1024.41(b)(2) provides further requirements for a servicer's review of a loss mitigation application submission. This section does not appear relevant in light of the parties' arguments.

[6] The Court notes that Plaintiff probably should have asserted his RESPA claim under Section 1024.41(c) but did not do so. Nevertheless, the Court will analyze this section for a possible plausible cause of action. *Johnson v. City of Shelby, Miss.,* —— U.S. ——, 135 S.Ct. 346, 346 (2014) ("Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

of all loss mitigation offers." *Id.* As a result, the court concluded, that the borrowers had pled a plausible cause of action because the servicer failed to notify the borrowers of one of the loss mitigation options. *Id.*

Here, by comparison, Plaintiff does not allege that he was eligible for another loss mitigation option of which Defendants failed to apprise him. The Complaint alleges that after receiving Plaintiff's complete Application, Defendants sent Plaintiff a denial letter that indicated the loss mitigation option Plaintiff had been considered for (the Proprietary Step Rate Program), the reason Plaintiff did not qualify for it (inadequate gross monthly income), and informed Plaintiff of his right to appeal this decision. Thus, Defendant told Plaintiff of the relevant modification option, but also explained why he did not qualify for it. Further, while Plaintiff argues that Defendant should have relied on the monthly gross income stated in his Application, rather than relying on the 2015 IRS Schedule C Income, this disagreement is not actionable. Plaintiff cites to no authority, nor could the Court find any, indicating that a loan servicer must credit certain information offered by the borrower.[7] Therefore, the Complaint does not allege a plausible violation of Section 1024.41(c).[8]

The Complaint also fails to state a plausible claim under Section 1024.41(d) for the same reasons provided above. Subsection (d) requires a servicer to provide a borrower with the reason(s) why he was not offered a loan modification option. As discussed above, Defendant told Plaintiff

---

[7] To the extent Plaintiff is correct that Section 1024.41(c) required Defendants to credit his monthly income amount ($10,511 rather than $6,874), the error would not be actionable because Plaintiff was able to raise the issue on appeal, and Defendants nevertheless found that he did not qualify for their loan modification program.

[8] The other parts of 1024.41(c) do not appear relevant to this matter. Plaintiff has not alleged that Defendant considered an incomplete Application or that Defendant required information not in Plaintiff's control to consider a complete application. *See* 12 C.F.R. § 1024.41(c)(4)(i).

in the denial letter that his income was inadequate for the Proprietary Step Program. Consequently, the Complaint does not allege a plausible violation of Section 1024.41(d).

Finally, Section 1024.41(h) governs the appeals process for loan modification denials. Subsection (h), in relevant part, requires a servicer within thirty days of receiving a borrower's appeal to "provide a notice to the borrower stating the servicer's determination of whether the servicer will offer the borrower a loss mitigation option based upon the appeal[.]" 12 C.F.R. § 1024.41(h)(4). Here, Plaintiff appealed Defendant's modification denial. His stated reason for appealing was that Defendant, in error, calculated his monthly income as $6,874, rather than the correct amount of $10,511. Less than thirty days later, Defendant sent a reply letter, which provided: "[a]fter carefully reviewing the information we currently have, we have determined that you still do not meet the requirements for a loan modification." Therefore, Plaintiff was able to exercise his right to appeal and Defendant, subsequently, provided him with a timely determination of that appeal. In addition, Plaintiff makes no plausible allegation that the higher monthly amount, $10,511, resulted in his being qualified for Defendants' loan modification program. Therefore, Plaintiff does not allege a violation of Section 1024.41(h).

Plaintiff also sent Defendant a series of Notices of Error ("NOE"). In the first NOE, Plaintiff reasserted why he believed that Defendant miscalculated his monthly gross income. Defendant responded in a thorough letter. Plaintiff's subsequent NOEs essentially repeated the content of the first NOE, with some additional detail. Section 1024.41(i) covers duplicative requests. It provides that "[a] servicer must comply with the requirements of this section for a borrower's loss mitigation application, unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application."

14

12 C.F.R. § 1024.41(i). Plaintiffs NOEs were essentially duplicative of his appeal that had already been denied.

After reviewing all of the Complaint's factual allegations and all relevant sections of 1024.41, the Court finds that Plaintiff does not plausibly allege a RESPA violation. Section 1024.41 regulates a servicer's duty to evaluate a borrower's complete application for loss mitigation options. The regulations require thoroughness and communication. They do not require a servicer to offer a loan modification option or to "consider" any of the borrower's representations as determinative. This case is not like *Bennett*, in which a borrower was qualified and approved for a loan modification option that was then not offered to him. Defendant found that Plaintiff was not qualified for a loan modification, *even after* considering Plaintiff's appeal, which contained the higher monthly gross income amount. Further, Plaintiff has provided no plausible allegation that a monthly gross income of $10,511 qualified him for Defendants' loan modification option. Therefore, the Court finds that the Complaint does not plausibly allege a violation under RESPA, 12 C.F.R. § 1024.41. Count One is, therefore, dismissed with prejudice.

b. **The New Jersey Consumer Fraud Act & Breach of the Duty of Good Faith and Fair Dealing (Counts II & III)**

In cases involving both federal and state claims, district courts have supplemental jurisdiction, also referred to as pendent jurisdiction, over the state claims when "they are so related to [the federal] claims . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. Indeed, the state and federal claims must "derive from a common nucleus of operative facts." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). Nevertheless, pendent jurisdiction "power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Id.* at 726. Moreover, the Supreme

Court has been clear that when "judicial economy, convenience, and fairness to litigants" are not forwarded by the exercise of supplemental jurisdiction, "a federal court should hesitate to exercise jurisdiction over state claims." *Id*; *see* 28 U.S.C. § 1367(c)(3). Indeed, the Court has directly held that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of America*, 383 U.S. at 726.

Here, the Court is dismissing Plaintiff's only federal claim, RESPA (Count I). The remaining counts, violation of NJCFA (Count II) and breach of the duty of good faith and fair dealing (Count III) are state law claims. The Court, therefore, declines to exercise jurisdiction over the remaining claims. Consequently, Counts II and III are dismissed without prejudice.[9]

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (D.E. 7) is **GRANTED**. Plaintiff's federal claim (Count I) is dismissed with prejudice. Plaintiff's state law claims (Counts II and III) are dismissed without prejudice and may be reasserted in state court in accordance with 28 U.S.C. § 1367(d). An appropriate Order accompanies this Opinion.

Dated: June 28, 2018

John Michael Vazquez, U.S.D.J.

---

[9] Because the Court is dismissing Plaintiff's state law claims without prejudice, it does not reach Defendants' entire controversy doctrine argument.